UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KIMBERLY TURNER,           )
                            )
        Plaintiff,          )
                            )
        vs.                )     Case No. 4:18 CV 1230 ACL
                            )
ANDREW M. SAUL, [1]      )
Commissioner of Social Security   )
Administration,           )
                            )
        Defendant.     )

## <u>MEMORANDUM</u>

Plaintiff Kimberly Turner brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Turner's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

Turner filed her application for benefits on May 4, 2015, claiming that she became unable

---

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

to work on May 3, 2015.   (Tr. 163-64.)   In her Disability Report, Turner alleged disability due to back pain, osteoarthritis, depression, chronic pain, bone spurs in the knees and left ankle, left hip pain, screws in the right big toe, rotator cuff shoulder pain, anxiety, and difficulty sitting or standing for long periods.   (Tr. 196.)   Turner was 45 years of age at her alleged onset of disability.   (Tr. 33.)   Her application was denied initially.   (Tr. 87-92.)   Turner's claim was denied by an ALJ on November 21, 2017.   (Tr. 11-35.)   On May 29, 2018, the Appeals Council denied Turner's claim for review.   (Tr. 1-3.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Turner argues that the ALJ "improperly weighed the opinions of Plaintiff's treating team, Nurse Murd[i]ck and the state agency psychological consultant, Dr. Akeson." (Doc. 19 at 3.)   She also argues that the ALJ erred "by drawing h[er] own inferences from medical reports."   *Id.* at 5.

## II.   The ALJ's Determination

The ALJ first found that Turner meets the insured status requirements of the Act through December 31, 2019.   (Tr. 16.)   She next found that Turner has not engaged in substantial gainful activity since May 3, 2015, the alleged onset of disability date.   *Id.*   In addition, the ALJ concluded that Turner had the following severe impairments: degenerative disc disease and degenerative joint disease of the cervical, thoracic, and lumbar spine, with mild scoliosis; degenerative joint disease of the right shoulder, bilateral knees, and bilateral feet; major depressive disorder; generalized anxiety disorder; panic disorder; and chronic pain syndrome.   (Tr. 17.) The ALJ found that Turner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 19.)

As to Turner's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the following additional limitations: she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can have no exposure to unprotected heights or hazardous machinery; can perform only occasional overhead reaching with the right upper extremity; is able to perform simple to moderately complex tasks, but can have only minimal changes in job settings and duties; can perform no fast-paced production work; can have no contact with the general public; and can have only occasional contact with coworkers and supervisors.

(Tr. 22.)

The ALJ found that Turner was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as cleaner/housekeeper, mail clerk, and routing clerk. (Tr. 33-34.) The ALJ therefore concluded that Turner was not under a disability, as defined in the Social Security Act, from May 3, 2015, through the date of this decision. (Tr. 34.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on May 3, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

(Tr. 35.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

(1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The plaintiff's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the plaintiff's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of

the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of

production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

As previously noted, Turner first argues that the ALJ improperly weighed the medical opinion evidence regarding her mental limitations. She also argues that the ALJ erred in

determining her physical RFC.

**1.        Opinion Evidence**

Turner first contends that the ALJ failed to provide proper weight to the opinions of Nurse

Janet Murdick, part of Turner's "treatment team," and to the opinions of state agency

psychological consultant Steven Akeson, Psy.D.

"A treating physician's opinion should be granted controlling weight if it is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in the record."  *Nowling v. Colvin*, 813 F.3d 1110, 1122 (8th Cir.

2016) (internal quotation and citations omitted).   A treating physician's opinion, however, "does

not automatically control or obviate the need to evaluate the record as a whole."   *Id.* at 1122-23

(citation omitted).   Rather, "an ALJ may discount or even disregard the opinion of a treating

physician where other medical assessments are supported by better or more thorough medical

evidence or where a treating physician renders inconsistent opinions that undermine the credibility

of such opinions."  *Id.* (citation omitted).   An ALJ need not give a treating physician's opinion

controlling weight when the opinion is based on a claimant's subjective complaints that the ALJ

does not find credible.  *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (citation omitted).

Nurse Murdick, a psychiatric nurse practitioner, completed a Mental Residual Functional

Capacity Questionnaire on April 20, 2017.   (Tr. 428-33.)   Ms. Murdick indicated that she began

seeing Turner for her major depression and panic disorder in January 2017, and that Turner had

previously been seen by Dr. Natarajan Laks.   (Tr. 428.)   Ms. Murdick expressed the opinion that

Turner was unable to meet competitive standards in her ability to maintain regular attendance and

be punctual within customary tolerances, sustain an ordinary routine without special supervision,

work in coordination with or proximity to others without being unduly distracted, complete a

normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress. (Tr. 430.) Turner was seriously limited but not precluded in her ability to remember work-like procedures, maintain attention for two-hour segments, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in a routine work setting. *Id.* When asked to describe the clinical findings demonstrating the severity of Turner's impairments, Ms. Murdick stated that Turner's depression affects her daily living, she does not want to leave her home, she cannot tolerate being around people, she experiences panic attacks two to four times a month, she experiences irritable mood swings, she occasionally has auditory hallucinations, and she "sees shadows." (Tr. 428.) Ms. Murdick further explained that her evaluation was "based on [Turner]'s reports," and that Ms. Murdick had not "seen her enough to have adequate knowledge to evaluate her otherwise." (Tr. 432.)

The ALJ assigned "little weight" to Ms. Murdick's opinions. (Tr. 27.) The ALJ first stated that, as a nurse practitioner, Ms. Murdick is not an acceptable medical source capable of rendering a medical opinion. *Id.* She further stated that Ms. Murdick's opinions are based upon only a brief treating relationship with Turner, consisting of three office visits between January 12, 2017, and April 20, 2017, the latter being the date she completed the questionnaire. *Id.* The ALJ further stated that Ms. Murdick's opinions are based on Turner's subjective reports, which were not fully consistent with the evidence of record. *Id.* The ALJ found that many of the symptoms endorsed by Ms. Murdick were unsupported by the medical records, including Ms. Murdick's own treatment notes. *Id.*

The undersigned finds that the ALJ properly evaluated Ms. Murdick's opinions. The ALJ gave the opinions little weight, because Ms. Murdick is not an acceptable medical source, and

because her opinions were generally inconsistent with the objective medical evidence and her own treatment notes.   Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources.*   It then divides *other sources* into two groups: *medical sources* and *non-medical sources.   Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists.   According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources, *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted).   Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists."   20 C.F.R. § 404.1513(d).[2]   "Information from these other sources cannot establish the existence of a medically determinable impairment.   Instead, there must be evidence from an "acceptable medical source" for this purpose."   SSR 06-03P, 2006 WL 2329939.   Further, these other sources are not entitled to controlling weight.   *LaCroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006).

Turner notes that Dr. Laks, Turner's previous treating psychiatrist, signed off on Ms. Murdick's opinion as a "Supervising Doctor."   (Tr. 433.)   Turner contends that, because Ms. Murdick treated Turner at the same location as Dr. Laks, Ms. Murdick had access to all of Turner's records from her prior treatment.   As the ALJ explained, however, Ms. Murdick admitted in her

[2]Many Social Security regulations were amended effective March 27, 2017.   Per 20 C.F.R. §§ 404.614, 404.1527, 416.325, 416.927, the Court will use the regulations in effect at the time that this claim was filed on May 4, 2015.

statement that her opinions were "based on [Turner]'s reports," as Ms. Murdick had not seen her enough times to form an opinion.   (Tr. 432.)   The face of the opinion, therefore, reveals that it was based on Turner's subjective complaints and of limited value in this action.   *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (Commissioner may give treating physician's opinion less deference when it is based on claimant's subjective complaints rather than objective medical evidence); *Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence).

The ALJ further pointed out inconsistencies between Ms. Murdick's opinions and the medical evidence of record.   For example, although Ms. Murdick found Turner suffered from hallucinations and paranoia, there is no evidence to support this finding.   In fact, Ms. Murdick's own treatment notes indicated that Turner had "*no* hallucinations, delusional thoughts or paranoia."   (Tr. 416-18.)   The ALJ provided ample reasons for discrediting Ms. Murdick's opinions.   *See McCoy v. Astrue*, 648 F.3d 605, 616-17 (8th Cir. 2011) (noting the ALJ may reject a medical opinion if it is "inconsistent with the record as a whole" or "based, at least in part, on [the claimant's] self-reported symptoms" where the claimant is deemed not credible.).

Turner next argues that the ALJ erred in affording "great weight" to the opinions of state agency psychological consultant Dr. Akeson, because the opinions were rendered two months after Turner's alleged onset of disability and almost two years prior to the hearing.

Dr. Akeson completed a Psychiatric Review Technique assessment and Mental Residual Functional Capacity Assessment on July 22, 2015.   (Tr. 77-79, 82-84.)   He expressed the opinion that Turner's severe affective disorder and anxiety disorder resulted in mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; moderate

difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation.   (Tr. 78.)   Dr. Akeson concluded that Turner was capable of moderately complex work with limited social contact.   (Tr. 79.)

The ALJ indicated that she was assigning "great weight" to Dr. Akeson's opinions, as they were informed by his review of the medical and other evidence of record.   (Tr. 26.)   She acknowledged that the record contained additional medical evidence received after Dr. Akeson rendered his opinions, yet found that the opinions were consistent with and supported by the overall medical evidence of record.   (Tr. 26-27.)   The ALJ noted that Turner's mental health treatment consisted largely of medication prescribed on outpatient visits, with no emergency visits or inpatient hospitalizations.   (Tr. 27.)

The regulations provide that ALJs are to consider the opinions of State agency psychological consultants "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."   20 C.F.R. § 416.913a(b)(1); *see also* 20 C.F.R. § 416.927(e) ("The rules in § 416.913a apply except that when an administrative law judge gives controlling weight to a treating source's medical opinion, the administrative law judge is not required to explain in the decision the weight he or she gave to the prior administrative medical findings in the claim.").

Here, the ALJ provided sufficient reasons for assigning weight to Dr. Akeson's opinions. Dr. Akeson summarized the records of all the mental health treatment Turner had received.   (Tr. 78-79.)   For example, Dr. Laks' records indicated Turner reported symptoms of being emotional, crying spells, anxiety, and mood swings.   (Tr. 78.)   Dr. Laks treated Turner with medications, and Turner reported doing better in November 2014.   (Tr. 78, 294.)   In March 2015, Turner indicated she experienced bad days, and wanted to apply for disability.   (Tr. 78, 293.)   Dr.

Akeson also discussed the treatment notes of Dr. S. Shah, M.D. (Tr. 79.) In December 2014, Turner reported depression for 10 to 16 years. (Tr. 79, 306.) In January and February of 2015, Turner's behavior was appropriate and no psychiatric issues were addressed. (Tr. 79, 309-15.) Turner reported that she was thinking about applying for disability in March 2015. (Tr. 79, 321.) No psychiatric issues were addressed in April or May of 2015. (Tr. 79, 324-27.)

Dr. Akeson's opinions that Turner had moderate limitations in maintaining social functioning, and concentration, but was capable of moderately complex work with limited social contact is consistent with the medical evidence cited by Dr. Akeson. This evidence revealed Turner sought infrequent mental health treatment, and few abnormalities were noted on examination. Dr. Akeson's opinions are also supported by the other medical evidence of record, which will be discussed further below. The ALJ was entitled to assign weight to the opinion of Dr. Akeson, as a highly qualified expert in disability determinations,

## 2.    RFC Determination

Turner next argues that the ALJ's RFC determination was not supported by substantial evidence.

RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of her limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v.*

*Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record).

Before determining Turner's RFC, the ALJ evaluated the consistency of Turner's subjective complaints or credibility.[3]  In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ considered the following factors in determining Turner's subjective complaints were not entirely consistent with the record: the objective evidence does not support the degree of symptoms and limitations alleged by Turner; her prescribed medications were effective in managing her pain; she denied medication side effects to her providers; she has received conservative treatment for her impairments; and her activities of taking a cruise to Mexico in mid-2017, traveling back and forth to Kansas City to care for her ill father in 2017, babysitting her grandchildren three times per week in September 2015, and taking care of her seven-year-old

---

[3]Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints.  However, the "regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

grandchild in January of 2017 are inconsistent with her allegations of extremely limited physical and mental abilities. (Tr. 30-32.) The reasons offered by the ALJ in support of her analysis of Turner's subjective complaints are based on substantial evidence.

With regard to Turner's mental RFC, the ALJ determined that she was able to perform simple to moderately complex tasks, but could have only minimal changes in job settings and duties; could perform no fast-paced production work; could have no contact with the general public; and could have only occasional contact with coworkers and supervisors. (Tr. 22.)

This determination is supported by the opinion of state agency psychologist Dr. Akeson, as discussed above. It is also consistent with the other medical evidence of record. For example, the ALJ noted that treatment notes reveal Turner displayed normal memory, comprehension, and cognition; appropriate and cooperative behavior; intact thought processes and thought content; proper grooming and hygiene; and an absence of hallucinations, delusions, and paranoia. (Tr. 20-21, 26, 28, 31, 292, 326, 329, 416-18, 438, 444, 449, 454, 459, 463, 468, 472, 477, 481, 486, 491, 499, 502, 526-27, 530, 533, 537.) There is no evidence Turner's mental condition ever required emergency treatment or inpatient hospitalization. (Tr. 22, 26, 28, 31.) Turner reported in her Function Report that she had no problems handling her own personal care, prepared meals daily, drove, went out alone, shopped for groceries, took care of her financial matters, spent time visiting her family, and had no problem getting along with others. (Tr. 228-31.) Significantly, Turner was also able to travel and take care of children after her alleged onset of disability. (Tr. 444, 450.) Although Turner testified at the hearing as to severe anxiety with frequent panic attacks and isolative behavior due to difficulty being around people, the record does not support these complaints. The ALJ's mental RFC is supported by substantial evidence on the record as a whole.

Turner next argues that the ALJ improperly drew upon her own inferences from medical reports in determining Turner's physical RFC. Turner correctly notes that there is no opinion evidence directly addressing her physical limitations. No such opinion, however, is required. Although an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to her RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (emphasis in original).

The ALJ found that Turner had the physical RFC to perform light work with the following additional limitations: can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can have no exposure to unprotected heights or hazardous machinery; and can perform only occasional overhead reaching with the right upper extremity. (Tr. 22.)

In making this determination, the ALJ assessed the consistency of Turner's subjective complaints with the record as previously discussed. The ALJ also summarized the extensive medical evidence in this case. She first discussed Turner's spinal complaints, and noted the following findings from imaging: 2014 x-rays of the thoracic spine showed mild scoliosis with a

"very mild gentle" rightward curve in the upper thoracic spine (Tr. 280); 2014 x-rays of the lumbar spine revealed marginal osteophytes and degenerative facet changes in the posterior elements at L5 especially, but maintained lumbar vertebral body heights and no malalignment (Tr. 281); a 2016 MRI of the cervical spine showed multi-level degenerative disc disease and facet osteoarthritis with disc bulging and facet arthropathy creating moderate bilateral foraminal stenosis but without central canal stenosis (Tr. 371); and a 2016 lumbar MRI showing minimal degenerative disc disease and degenerative joint disease, with no evidence of central or lateral spinal stenosis (Tr. 373). (Tr. 23.) The ALJ stated that treatment notes document some tenderness and spasms of the spine, yet note repeated findings of normal range of motion of the spine, other than isolated findings of decreased range of motion of the cervical spine. (Tr. 23, 307-29, 438-644.) Turner was once observed to exhibit collapsing weakness of the quadriceps muscles due to reported hip and knee pain (Tr. 337), but has otherwise consistently exhibited normal strength of the bilateral upper and lower extremities on examination (Tr. 307-29, 438-644). (Tr. 23.) The ALJ also cited the consistent findings of normal sensation, reflexes, and coordination of the bilateral upper and lower extremities; and a normal gait, station, and ambulation. (Tr. 23, 307-29, 337, 438-644.)

The ALJ discussed the findings of neurosurgeon Paul H. Young, M.D. (Tr. 24, 337-38.) Turner saw Dr. Young on November 28, 2016, with complaints of a lifelong history of pain in her lower back and neck pain for two years that comes and goes. (Tr. 337.) Dr. Young reviewed Turner's cervical and lumbar spine MRIs and indicated they revealed mild to moderate degenerative disc changes in the neck with severe malalignment and less than age-related degenerative disc changes. *Id.* On examination, Turner had very restricted neck and shoulder mobility, but normal sensory, motor, and reflex testing of the upper and lower extremities. *Id.*

Dr. Young found that Turner had "mechanical pain syndrome," with "nothing to suggest the need for surgical intervention." *Id.* He recommended a physical and exercise therapy program designed to improve her overall spinal alignment. (Tr. 338.) Dr. Young encouraged Turner to be active with everyday exercise and cease smoking. *Id.* Turner participated in physical therapy, but reported the physical therapy caused headaches and nausea. (Tr. 339.) In January 2017, Dr. Young advised Turner that there was no physical reason for these symptoms and instructed her to "work her way through these symptoms." *Id.*

The ALJ noted that Turner's complaints of back and neck pain have been treated with various narcotic pain medications and a muscle relaxant since 2017, and that Turner has repeatedly reported symptom improvement with her medication regimen. (Tr. 23-24, 306-30, 438-644.) The ALJ stated that Turner has not been referred to an orthopedist or neurologist for further treatment of her spinal impairments, has not been prescribed any assistive deices, nor has she been advised to abstain from any activities due to her spinal impairments. (Tr. 24.) She concluded that Turner retained the capacity to perform light work with additional postural and environmental limitations.

The ALJ also discussed the evidence regarding Turner's degenerative joint disease of the right shoulder, knees, and feet. (Tr. 24.) She pointed out the following imaging findings: 2011 x-rays of the right shoulder showed mild narrowing at the acromioclavicular joint without spurring or subluxation (Tr. 284); 2012 x-rays of the left knee showed mild spurring (Tr. 279); and 2012 x-rays of the left ankle showed only small inferior and posterior calcaneal spurs (Tr. 282). (Tr. 24.) The ALJ stated that treatment notes reveal intermittent complaints of right shoulder pain, bilateral knee pain, and foot pain to Turner's primary care physician. (Tr. 24.) Examinations reflected occasional swelling and crepitus of the knees and tenderness to palpation of the right

shoulder between October 2015 and January 2016 (Tr. 541, 544, 547, 550, 553); but no findings of ankle joint swelling, tenderness, or crepitus, and normal range of motion of both shoulders other than one isolated finding of decreased shoulder range of motion in November 2016 (Tr. 337); normal bilateral upper extremity strength; and normal gait.   (Tr. 25.)   Turner has not been referred to an orthopedist or received any other additional treatment for her right shoulder, knee, or foot pain.   (Tr. 25.)   The ALJ concluded that Turner was capable of performing light work with additional postural, manipulative, and environmental limitations.   (Tr. 25.)

The Court finds that substantial evidence on the record as a whole supports the ALJ's physical RFC determination.   Although imaging of the spine supports the presence of musculoskeletal impairments, physical examinations have revealed few abnormalities.   Turner was treated conservatively with pain medication, physical therapy, and nutritional therapy. Neurosurgeon Dr. Young did not recommend surgery, finding instead Turner's pain was mechanical, and recommended exercise and tobacco cessation.   The ALJ also accurately found that Turner's significant daily activities after her alleged onset of disability were inconsistent with her allegations of disabling pain and limitations.   The evidence of record is consistent with the performance of a limited range of light work.

An ALJ's decision is not to be disturbed "'so long as the...decision falls within the available zone of choice.   An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'" *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).   Although Turner articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above.   *See Fentress v. Berryhill*, 854 F.3d

1016, 1020 (8th Cir. 2017) (concluding that "[w]hile it was not surprising that in an administrative record which exceeds 1,500 pages, [claimant] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination).

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of September, 2019.